CHARLES H. PHILLIPS, Respondent, v. THE RENSSELAER AND SARATOGA RAILROAD COMPANY, Appellant.

49 177<br>112 377

Plaintiff attempted to get upon one of defendant's cars, while slowly passing a station where he had bought a ticket. The platform and steps of the car were full, so that he could only get upon the lower step. A jerk of the cars threw him off, but he held on to the iron rod and ran along by the car striving to recover his position upon the step, although the speed of the train was increasing, when he was struck by a platform near the track and injured. *Held*, there was such contributory negligence upon his part as justified a nonsuit; and that the facts that some one upon the train called out the station, that others were also getting upon the train, and that plaintiff himself and others had got on and off at this station when trains were in motion, did not justify plaintiff's persistence in getting on the car when thrown from the step, without regarding objects near the track. (CHURCH, Ch. J., dissenting.)

(Argued April 2d, 1872; decided April 9th, 1872.)

APPEAL from an order of the General Term of the Supreme Court in the third judicial department, setting aside a nonsuit and granting a new trial. (Reported below, 57 Barb., 642.)

The facts appear sufficiently in the opinion. Plaintiff was nonsuited, and exceptions were ordered to be heard at first instance at General Term.

*John H. Reynolds* for the appellant. Plaintiff's attempt to get on the train while in motion was an act of negligence, which, in fact, contributed to the injury; and he, for this reason, was not entitled to recover. (*Lovett* v. *Salem and R. R. Co.*, 9 Allen, 557; *Owens* v. *H. R. R. Co.*, 3 Bosworth, 374; *Mettlertadt* v. *Ninth Ave. R. R. Co.*, 32 How. Pr. R., 428; *Gennon* v. *N. Y. and Harlem R. R. Co.*, 1 Robt., 25.) To recover, he must show he was wholly without fault. (*Gill* v. *J. S. C. Co.*, 12 Jur. N. S., 727.) The improper neglect of defendant's agents to stop the train did not justify plaintiff's act. (*Dumont* v. *New Orleans and C. R. R. Co.*, 9 La. Ann. R., 441; *R. R. Co.* v. *Aspen*, 23 Penn. R., 147.) Defendant was not chargeable with knowledge of plaintiff's

improper attempt to get upon the cars. (*Lucas* v. *T. and N. B. R. R. Co.*, 6 Gray, 64.)

*Lyman Tremain* for the respondent. The court erred in excluding evidence of plaintiff's knowledge of the fact that defendant's trains did not always stop and passengers got on while they were in motion. (*Fuller* v. *Naugatuck R. R. Co.*, 21 Conn., 557.) In granting a nonsuit the court is bound to assume that, upon all controverted questions of fact, the truth is as claimed by the plaintiff. (*Cook* v. *N. Y. C. R. R. Co.*, 3 Keyes, 476; *People* v. *Roe*, 1st Hill, 460, note *a;* *Foot* v. *Wiswall*, 14 J. R., 304.) Ordinary care is all the law requires. (3 Keyes, 479.) The act of getting on the cars when in motion is not, *per se*, negligence. (S. & R. on Neg., § 282.) The calling the names of the station is an invitation to the public, to passengers on board to leave, and to passengers at the station to enter the cars. (*Whittaker* v. *The Manchester, Sheffield and Lincolnshire Railway Co.*, MS., decided June 7, 1870, in Com. Pleas of England.) Railroad companies are bound to keep in a safe condition the ordinary space in which passengers go to and from the trains. (*Hulbert* v. *N. Y. Cent. R. R. Co.*, 40 N. Y., 146; *McDonald* v. *Chicago and N. Y. W. R. R. Co.*, Am. Law Reg. N. S., 9th vol., No. 1, p. 10, and cases there cited; *Burgess* v. *R. R. Co.*, 95 Eng. Com. Law, 923, unfenced hole near depot building; *Martin* v. *R. R. Co.*, 81 id., 179, defective light in station grounds; *Langmore* v. *R. R. Co.*, 19 C. B. [N. S.], 183; *Sawyer* v. *R. R. Co.*, 27 Verm., 377; *March* v. *R. R. Co.*, 9 Fost., 9, 39, 40.) Regulations as to place for entering cars are of no value, unless known to the traveler; and if disregarded, with knowledge of the company, are deemed waived. *McDonald* v. *C. and N. Y. Co.*, 5 Am. Law Reg. [N. S.], 24.) In the management and construction of their road they are bound to use the utmost care and skill to guard against danger to passengers. (*McDonald's Case, supra; Cook* v. *N. Y. Central*, 3 Keyes, 479; *Bowen* v. *N. Y. Central*, 18 N. Y., 408; *Caldwell* v. *Murphy*, 1 Duer, 233.) It must use

prudence in starting trains, and not set off with a violent jerk. (S. & R. on Neg., §§ 275, 276; *Nichols* v. *Sixth Av. R. R. Co.*, 38 N. Y., 131.) The question of negligence in such case belongs to a jury, and it is error for the court to take it from the proper tribunal. (3 Ker., 583; 15 N. Y., 380; 2 Am. R. Cases, 382; 2 Ker., 129; 13 Pet., 181; *Bernhardt* v. *The Rens. and Saratoga R. R. Co.*, 19 How. Pr., 199; *Trust* v. *The Hudson River R. R. Co.*, id., 205; *McGrath* v. *Same*, id., 211; *Oldfield* v. *N. Y. and Harlem R. R. Co.*, 14 N. Y., 310; *Ireland* v. *The Oswego H. and S. P. R. Co.*, 533; *Labar* v. *Klaplan*, 4 Conn., 546; *B.* v. *B. and M. R. R. Co.*, 2 Cush., 395; 30 Penn., 454; 19 Conn., 566.)

Grover, J. The question arising upon the exception to the nonsuit, ordered by the judge upon trial, is whether the jury would have been warranted in finding from the evidence that the injury received by the plaintiff resulted from the negligence of the defendant or its servants, and that he was free from any negligence contributing thereto. The inquiry as to the plaintiff is whether it was negligence in him to attempt to get upon the train while in motion under the circumstances which the evidence showed, as no question can be made but that such attempt contributed to the injury. The plaintiff testified in substance that he bought a ticket and that a train soon after came along, slowed up but did not stop, but passed along, some one on board hallooing that there was to be another train along. That the station where he bought the ticket was the west side of the track, but that there was no platform there, from which passengers could get upon the cars. That there was quite a crowd there, and upon the approach of the train in question, he and some others went over to the east side of the track, thinking they could more readily get upon the train from there. That the cars came and slowed down, and, as he started to get on, they had about stopped; others began to jump on; ahead of him a good many were jumping on. That the brakeman called out West

Troy (name of the station). That they were getting on all along the cars. That he got on the step, two men got on ahead of him, and he could not get any further up. That the cars were then jerked ahead and jerked him off the step, but he did not let loose of the handle. That he recovered back, and when they were on pretty good speed, they jerked very powerful. The handle was the iron rod. That he got on because he saw others getting on, so he recovered back upon the step, but had no more than recovered back, before he was knocked off by the platform, and rolled in between the car and the platform. That the cars were going very slow when he got on, but the second time were going pretty good speed. That he did not see or know anything about the platform until he struck it. It was proved that this platform was a structure of the height of the floor of the cars, the front of which was seven inches from the outside of a car upon the track, erected and used only for the purpose of loading and unloading freight. It was further proved that the distance from where the plaintiff first attempted to get upon the car to the platform, was about sixty feet. To attempt to get upon the car while in motion, the platform and steps of which was so crowded that he could not get upon the platform if he succeeded in getting upon the lower step; to persist in such attempts, when, by the jerking of the cars, he was thrown from the step; to hold on to the iron and run along, trying to get upon the car while the speed was increasing, without looking to see if there was danger of collision with some object near the track or other danger to be apprehended, was not only negligence, but exhibited great if not reckless disregard of his safety by the plaintiff. This was the conduct of the plaintiff, as testified to by himself, and was such that, without explanation, a verdict finding him free from contributory negligence would have been unauthorized. Unless evidence was given tending to prove facts explaining and justifying this conduct of the plaintiff, the nonsuit was proper. The plaintiff proved that the name of the station was called on board of the train before he attempted to get on. This furnished no excuse for

the plaintiff. This call was to notify those on board wishing to stop at that station, so that they could be in readiness to get off, but would not excuse them from the imputation of negligence in jumping off with a crowd, while they knew not only that the train was in motion, but jerking up and increasing its speed. The plaintiff knew all this, and still persisted in his attempt to get into the car. *Whittaker* v. *The Manchester R. R. Co.* (Eng. Com. Pleas), cited by counsel from the London Times, has no analogy to the present case. There the plaintiff was a passenger upon the train, on a dark night, and upon the name of the station where he wished to get off being called, opened the door and stepped upon what he believed to be the platform, but which in fact was the parapet of a bridge, and fell over. Held, that a verdict in his favor should be sustained. The fact that others were getting upon the train in a manner equally reckless as the attempt made by the plaintiff affords no justification for him. An excited crowd, eager to get on board, each ahead of the other, too impatient to wait until the train stops, make the attempt, each at his own risk, and no one is excused by the numbers making the attempt. Under such circumstances the cry of those on board of the train that it will stop, and giving warning of the danger, will be unheard, as it was by the plaintiff in this case, or unheeded if heard. If people will encounter such risks, the law cannot relieve them against the consequences. The plaintiff further gave evidence tending to show, and notwithstanding the evidence to the contrary the court must assume as true, that on some previous occasions the defendant had slowed trains at this station and passengers had got off and others had got on, when the trains did not come to a full stop at all. This was reckless on the part of the company, if sanctioned by the directors, and if not by those in charge of the train; and if, while so doing, any person should be killed, it is clear that those responsible therefor might be convicted of manslaughter under the statute. But such reckless conduct of the company or of those managing its trains does not justify any person in rushing at

the trains at that station while moving, and attempting to get on, and, when thrown from the steps by the jerking of the cars, hanging on to the irons, and continuing ineffectual attempts to get on for rods, and until he is injured by a collision with some object outside of the cars. No prudent man would voluntarily encounter such risks. The counsel cites Shearman & Redfield on Negligence (§ 282) for the purpose of showing that a person is not chargeable with negligence in attempting to get upon a horse car in moderate motion when the driver refuses to stop; but should he make the attempt and fail, and then hang on, running outside of the car until he came in collision with a vehicle, the case would be different. The counsel is correct in the position that if the evidence offered by the plaintiff and improperly excluded, in connection with that given, would have authorized the jury to find a verdict in his favor, the order must be affirmed. The evidence so offered was that the plaintiff had, before that, got off and on at this place when the cars stopped no more than at this time, and he had knowledge that they frequently did not stop any more than as they slowed down this time. This must be considered in connection with the fact indisputably proved that the train in question did in fact stop upon arriving at the proper place for that purpose, and that it was intended so to stop. So considered, the facts offered did not excuse the conduct of the plaintiff when he found himself thrown from the step by the jerking of the cars; that the speed was increasing. Ordinary prudence required him to abandon the attempt instead of hanging on and continuing it until he came in collision with the platform. If the train did not stop so as to enable him safely to get on, he had his remedy against the defendant. The order appealed from must be reversed and the judgment given upon the nonsuit.

All concur except CHURCH, Ch. J., dissenting, and PECKHAM, J., not voting.

Order reversed and judgment accordingly.